UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOHNNY GRAYS, MIKAL WILLIAMS,**
and **JERMAINE O. BRODERICK, SR.,**

      Plaintiffs,

vs.                                 Case No: 21-cv-
                                         Hon.

**ALEJANDRO N. MAYORKAS, SECRETARY,**
**U.S. DEPARTMENT OF HOMELAND SECURITY**,

      Defendant.
_____

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/ Fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com
_____

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

     Plaintiffs Johnny Grays, Mikal Williams, and Jermaine Broderick, Sr., by

their attorneys Deborah Gordon Law, complain against Defendant as follows:

1

## Jurisdiction and Parties

1.     This is an action by Plaintiffs Johnny Grays, Mikal Williams, and Jermaine Broderick, Sr., against Defendant Alejandro N. Mayorkas, Secretary, U.S. Department of Homeland Security ("Defendant") for discriminating against Plaintiffs on the basis of their race, and retaliating against them.

2.     This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.     Plaintiffs Grays, Williams, and Broderick reside in the Eastern District of Michigan.

4.     Defendant is a United States federal executive department doing business in this District.

## Background Facts

5.     Defendant is a United States federal executive department which operates the United States Customs and Border Protection ("CBP") agency.

6.     The CBP is Defendant's largest federal law enforcement agency, and is responsible for operating the security and facilitation operations at over 300 ports of entry throughout the country, including the Blue Water Bridge in Port Huron, Michigan, located at 526 Water Street, Port Huron, MI 48060.

7.     CBP's main mission is to prevent terrorism and criminal activities at the border.

2

8.     To that end, Defendant and CBP employ thousands of CBP Officers, including Plaintiffs.

9.     CBP Officers are federal law enforcement officers, and perform duties provided by law and Department regulations, including making arrests, conducting searches, making seizures, bearing firearms, and serving any order or warrant.

10.    CBP Officers have full law enforcement powers on and off duty.

11.    Plaintiffs are stationed at the Blue Water Bridge in Port Huron, Michigan.

12.    This location employs approximately 275 CBP officers. Since 2008, there have been a total of approximately 7 African American CBP officers. Currently, there are only 4 African American CPB officers stationed at Port Huron. Supervisory and managerial officers are almost exclusively white.

13.    Plaintiff Grays began his employment with Defendant in August 2008, and currently holds the position of CBP Officer, GS-12.

14.    Plaintiff Grays is African American.

15.    Plaintiff Mikal Williams began his employment with Defendant in July 2019, and currently holds the position of CBP Officer, GS-11.

16.    Plaintiff Williams is African American.

17.    Plaintiff Broderick began his employment with Defendant in June 2019, and currently holds the position of CBP Officer, GS-9.

18.     Plaintiff Broderick is African American.

19.     All of Plaintiffs' work performance records have been at all times satisfactory or better.

20.     Plaintiffs are supervised by Supervisory CBP Officers, a Chief CBP Officer, an Assistant Area Port Director, an Area Port Director and various other management officials. All of Plaintiffs' supervisors are and have been white.

21.     For at least the last 3 years, Plaintiffs were subjected to a hostile work environment based on race in that Defendants routinely discriminate against and harass members of the travelling public who are Black. Plaintiffs were aware of this pattern and it often occurred in their presence.  In addition, Plaintiffs were subjected harassment and a difference in treatment on the basis of their race. When Plaintiffs engaged in protected activity by lodging complaints they were retaliated against.

### Defendants Discriminate Against the Non-White Travelling Public Because of Race

22.     Since approximately 2009, Management officials, including Chief CBP Officer Andrew Beaudry, all of whom are white, have targeted multiple Black male drivers for stops with little or no justification based on racial animus and profiling.

23.     Management officials, including Chief Beaudry, frequently direct officers, including Plaintiffs, to unduly scrutinize non-white travelers.

24.     Between 2009-present, Plaintiffs have observed CBP officers, including Chief Beaudry, target non-white travelers for additional inspections based

4

only on race. This heightened level of scrutiny was not applied to white travelers and violates CBP policy on racial profiling.

25.     Plaintiffs also witnessed unprofessional and demeaning interviews of non-white travelers during these additional inspections.

26.     For example, in February 2020, Plaintiff Grays observed a CBP officer have a discriminatory interaction with a group of 17 U.S. citizens of color returning from Toronto in two late model SUVs.

27.     The travelers, who appeared to be young African American men, were treated without respect and were insulted by CBP officers at Blue Water Bridge only because of their race.

28.     Plaintiff Grays requested that the officers who engaged in this behavior receive disciplinary counseling and explained that racial profiling was not in line with DHS values. Upon information and belief, this counseling never occurred.

29.     In March 2020, Plaintiff Grays and his partner were ordered to make an outbound stop of a white GM Suburban with a Maryland license plate.

30.     Plaintiff Grays asked what the reasoning was for this order, and he was told, "It was a good look," and that the family appeared "suspicious" solely because they (an African American family) were driving a luxury vehicle with Maryland plates.

31.   Plaintiff Grays questioned and voiced his opposition to management as to this stop and how it was handled. This was based on Gray's observation that similarly situated white families were treated differently.

32.   This resulted in Chief Beaudry calling Plaintiff into his office. Chief Beaudry told Grays and Goodhue that they "did a good job."

33.   During the week of October 13, 2020, Plaintiffs Broderick and Williams became aware that a Black family from Texas had made a wrong turn onto the Blue Water Bridge.

34.   Due to the family's race, Beaudry directed CBP Officers to call the Port Huron Police Department to report that the driver did not have a valid driver's license with him at the time he encountered CBP Officers. Similarly situated white drivers were not reported to the Port Huron Police.

35.   Even though the Port Huron Police Department declined to intervene in the matter, Beaudry threatened the driver with arrest unless he had someone came to the port to drive his vehicle home. This would not have occurred but for the race of the driver and his family.

36.   In February 2021, Plaintiff Williams observed CBP Officers subject two black male travelers to an additional inspection which included the travelers being removed from their vehicle and subjected to a criminal record check and

vehicle inspection because they turned into the wrong lane. This would not have occurred but for the travelers' race.

37.     The open atmosphere of hostility towards non-white travelers created by Defendant created a work environment permeated with discriminatory intimidation, ridicule, and insult that is so severe and pervasive that it has altered the conditions of Plaintiffs' work environment and has created an abusive working environment for them.

38.     Defendant has made no secret of its hostility and disdain towards people of color in the traveling public, and in particular African Americans. This has caused Plaintiffs anguish and pain, humiliation, embarrassment, outrage, and has significantly interfered with Plaintiffs' ability to do their jobs.

39.     When Plaintiffs brought this discrimination and hostile environment to Defendants' attention, their complaints were alternately ignored or met with retaliation.

### *Defendant Employees Harass and Discriminate Against Plaintiffs Because of their Race*

40.     African American employees, including Plaintiffs, have been subjected to harassment and discrimination because of their race.

41.     Several times each year, beginning in 2009, Chief of Staff Chantal Lasky, who is white, repeatedly asked Plaintiff Grays, "Why are you here?" "Why are you here at Blue Water Bridge in Port Huron, MI?" "You're from Detroit, right?

Why are you here?" "How do you still have your job?" "Why haven't you been fired

yet?" Lasky's point was that this was not a proper duty station for Plaintiff because

of his race.

42.     Beginning December 2009 and persisting through the present, on

numerous occasions, other CBP Officers, including Supervisory CBP Officer K.

Hollins, Chief of Staff Lasky, Watch Commander A. Donaghy and Chief Dupuis

sought to touch Plaintiff Grays' hair. Despite Plaintiff declining these requests and

explaining why they have negative racial undertones and are offensive, they

persisted.

43.     During 2018, a Michigan Department of Transportation ("MDOT")

employee Plaintiff Grays was familiar with reported him as a "Black man with a

gun" to the white CBP officers at Blue Water Bridge. This was obviously

problematic in that Plaintiff was both familiar with the MDOT employee and was in

uniform performing his duties. Although the report was obviously erroneous,

Defendant employees did not promptly close the matter, causing Grays to needlessly

remain under investigation.

44.     From December 2019 through May 2020, Field Training Officer Aaron

Haeck, who is white, attempted to intimidate Plaintiff Williams by subjecting him

to unwanted, offensive, and aggressive touching on his thigh (in/around December

8

2019); arm/wrist (in/around February 2020); and chest/shoulder (in/around May 2020).

45.     On or about May 4, 2020, Haeck instructed Plaintiff Williams to bring his coffee cup with him to conduct an interview of semi-truck drivers traveling through the port of entry. Plaintiff, believing this instruction to be unprofessional, stated he would leave his coffee cup in the car. Haeck then threatened Plaintiff Williams' continued employment by stating that he "needed to watch what he said until he was off on the job training."

46.     On or about May 16, 2020, while Plaintiff Broderick was placing a lunch order for several CBPOs with a local Afro-Caribbean restaurant Field Training Officer Aaron Haeck loudly asserted that the food contained dog meat.

47.     On multiple other occasions throughout 2020, Haeck made disparaging comments regarding Plaintiff Broderick's Afro-Caribbean food.

48.     On or about May 16, 2020, Haeck made an aggressive, incorrect comment to Plaintiff Broderick implying that Broderick should not have received an award. Haeck then threatened Broderick's continued employment by asking him, "When are you off probation? Isn't it 2 years for veterans?" At that time, Plaintiff Broderick had over a year left in his probationary period.

49.     On or about June 6, 2020, CBP Officer James Allen told Plaintiff Grays that because of the way Grays' hair looked, if he changed into civilian clothes he

9

could "blend in with [Black] protestors" and that he should "tell the protestors your name is Indike Mfufu[1]."

50.     Between June 8-12, 2020, at the height of recent civil unrest regarding domestic race relations, Chief of Staff Lasky caused a photo depicting Plaintiffs Broderick and Williams in uniform to be posted on the Port's public Twitter account without their permission, presenting them as tokens, and jeopardizing their safety, as set forth below.

51.     Just prior to this post being made, Port officials had released a directive to officers that they should refrain from identifying themselves as law enforcement officers, going so far as to suggest that they should change out of their uniforms before walking to their cars after their shifts concluded so that they would not be recognized by the public.

52.     Chief of Staff Lasky refused Plaintiff Williams' requests that the photograph be removed from the Port's Twitter account, but immediately took it down when a white female officer who was also depicted requested it be removed.

### *Defendant Employees Retaliated Against Plaintiffs*

53.     Plaintiffs complained of the discrimination they witnessed and experienced as set forth above and filed complaints with the agency's Equal Employment Opportunity Office.  Plaintiff Grays received notice of his right to sue

---

[1] Allen made up what he believed to be a stereotypically African-sounding name.

the agency on January 12, 2021; Plaintiff Williams received notice of his right to sue on February 3, 2021; Plaintiff Broderick received notice of his right to sue on February 4, 2021.

54.     Almost immediately after Plaintiffs' verbal and written complaints, Defendant began to retaliate against Plaintiffs.

55.     On April 7, 2020, Chief Beaudry and Assistant Port Director Gerald Little ordered Plaintiff Grays to bring in a doctor's note for one day of sick leave, despite the day being Grays' regularly scheduled day off, and despite contractual language and/or policies stating that there was no need for medical documentation to be provided for this type of absence.

56.     On April 8, 2020, Plaintiff Grays asked Beaudry about this apparent breach of protocol. In response, Beaudry and Moore raised their voices and subjected Grays to aggressive, unwanted touching by rapidly approaching him and placing their hands on him.

57.     Also on April 8, 2020, Plaintiff Gray's Union Steward approached another bargaining unit employee who witnessed the altercation to obtain his observations.

58.     A few hours after the steward's discussion with the employee, the Union President was summoned to Assistant Port Director Gerald Little's office,

11

where he improperly issued her a "cease and desist" letter demanding she stop requesting statements from bargaining unit employees regarding the Grays incident.

59.     The Union subsequently filed an Unfair Labor Practice Grievance against the agency for issuing the "cease and desist" letter. Defendant rescinded the letter on April 21, 2020.

60.     On April 8, 2020, Chief Beaudry and Assistant Port Director Little requested that the agency's Joint Intake Center initiate an investigation into Plaintiff Grays' behavior toward Beaudry earlier that day, which they then used as an excuse to immediately revoke his authority to carry his service weapon and place him on "desk duty."

61.     The investigation was maliciously instigated both because of Plaintiff Grays' race and because of his history of complaining about race discrimination against himself and others.

62.     As of the date of this filing, 11 months later, the internal investigation into the April 8, 2020 incident remains ongoing. Plaintiff Grays needlessly remains on desk duty.

63.     Defendant has refused to provide Plaintiff any information about the investigation's progress or findings except to notify him at regular intervals that it remains ongoing.

64.     The maliciously-initiated internal investigation has prevented Plaintiff from performing his regular duties, resulting in a loss of status, overtime pay, and preventing him from obtaining employment elsewhere within the agency.

65.     The investigation also serves the purpose of preventing Plaintiff Grays from observing and making further reports about the ongoing race discrimination against the traveling public at the port.

66.     Plaintiff Grays is forced sit at a desk just outside Beaudry's office door.

67.     While on "desk duty," Plaintiff has experienced ongoing harassment and retaliation.

68.     For example, on May 14, 2020, Chief of Staff Lasky notified Plaintiff Grays that he is prohibited from leaving his desk. Grays has also been instructed that he must obtain a supervisor's approval before using the restroom.

69.     As a result of the ongoing hostile work environment at the Port Huron port of entry, Plaintiff Broderick volunteered for a temporary duty assignment in Southern Texas, which began in late August 2020 and concluded in October 2020.

## COUNT I
**Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964,**

70.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

71.     At all relevant times, Plaintiffs were employees and Defendant their employer within the meanings set forth in Title IVV of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

72.     Plaintiffs are members of a protected class; they are African-American.

73.     Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of their race.

74.     Similarly situated white employees were treated better in the terms and conditions of their employment.

75.     Agents of Defendant were predisposed to discriminate against Plaintiffs based on their race.

76.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

77.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were unlawfully harassed, and were subjected to an improper investigation among other adverse actions.

78.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and other benefits,

outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

**COUNT II**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964** *as to Plaintiff Grays*

79.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

80.     At all relevant times, Plaintiffs were employees and Defendant their employer within the meanings set forth in Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. § 2000(e), *et seq.*

81.     Plaintiffs engaged in activity protected by Title VII when they complained of and opposed unlawful racist discrimination.

82.     The retaliation by Defendants that Plaintiffs experienced included undue scrutiny of their time and attendance, improper accounting of their time and attendance, unlawful harassment, and subjection to an improper investigation among other adverse actions.

83.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

84.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were unlawfully harassed, were subjected to an improper investigation among other adverse actions.

85.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and other benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

### COUNT III
### Race Discrimination in Violation of 42 USC § 1981

86.     Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

87.     42 USC § 1981 prohibits individuals from engaging in acts of racial discrimination.

88.     Defendant's discrimination against Plaintiffs as described above is in violation of the rights of plaintiffs afforded them by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

89.     Plaintiffs are members of a protected class; they are African-American.

90.     By the conduct described above, Defendant intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 USC § 1981.

91.     Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of their race.

92.     Similarly situated white employees were treated better in the terms and conditions of their employment.

93.     Agents of Defendant were predisposed to discriminate against Plaintiffs based on their race.

94.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

95.     As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were unlawfully harassed, were subjected to an improper investigation among other adverse actions.

96.     As a direct and proximate result of Defendant's wrongful acts, Plaintiffs sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and other benefits,

outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT IV
### Retaliation in Violation of 42 USC § 1981 *as to Plaintiff Grays*

97.    Plaintiffs repeat and reallege the allegations set forth in the foregoing paragraphs.

98.    42 USC § 1981 prohibits individuals from retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination.

99.    Defendant's discrimination against Plaintiffs as described above is in violation of the rights of plaintiffs afforded them by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

100.   By the conduct described above, Defendant intentionally deprived Plaintiffs of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendants, in violation of 42 USC § 1981.

101.   Plaintiffs engaged in activity protected by 42 USC § 1981 when they complained of and opposed unlawful racist discrimination.

102.   The retaliation by Defendants that Plaintiffs experienced included undue scrutiny of their time and attendance, improper accounting of their time and

18

attendance, unlawful harassment, and subjection to an improper investigation among other adverse actions.

103.   The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiffs.

104.   As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiffs' employment were adversely affected, and Plaintiffs were subjected to an improper investigation among other adverse actions.

105.   As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and other benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## RELIEF REQUESTED

For all the foregoing reasons, Plaintiffs demand judgment against Defendant as follows:

**A.    LEGAL RELIEF**

1.    Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2.   A judgment for lost wages and benefits, past and future, in whatever amount Plaintiff is found to be entitled;

3.   Exemplary damages in whatever amount Plaintiff is found to be entitled;

4.   Punitive damages in whatever amount Plaintiff is found to be entitled; and

5.   An award of interest, costs and reasonable attorney fees.

**B.   DECLARATORY & EQUITABLE RELIEF**

1.   An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation;

2.   An award of interest, costs, and reasonable attorney fees; and

3.   Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.


Dated:  March 9, 2021                 **DEBORAH GORDON LAW**
                                      /s/Deborah L. Gordon (P27058)
                                      Elizabeth Marzotto Taylor (P82061)
                                      Sarah Gordon Thomas (P83935)
                                      Molly Savage (P84472)
                                      Attorneys for Plaintiffs
                                      33 Bloomfield Hills Parkway, Suite 220
                                      Bloomfield Hills, Michigan 48304
                                      (248) 258-2500/ Fax (248) 258-7881
                                      dgordon@deborahgordonlaw.com
                                      emarzottotaylor@deborahgordonlaw.com
                                      sthomas@deborahgordonlaw.com
                                      msavage@deborahgordonlaw.com

## **JURY DEMAND**

Plaintiffs, by their attorneys **Deborah Gordon Law,** demand a trial by jury of all the issues in this cause.

Dated:  March 9, 2021

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiffs
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500/ Fax (248) 258-7881
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com