**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

JOHNNY GRAYS,

        Plaintiff,

v.                                            Case No. 21-10526

ALEJANDRO N. MAYORKAS,

        Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

Plaintiff Johnny Grays works as an officer for Defendant in the Customs and Border Protection ("CBP"). (ECF No. 1.) He alleges that, while working for Defendant, he observed CBP employees discriminating against the general public on the basis of race and was directed to participate in this conduct. In addition, Plaintiff alleges he was subject to racial discrimination and retaliation, the latter of which occurred after filing complaints with the Equal Employment Opportunity Office. He brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

Before the court is Plaintiff's motion to compel. (ECF No. 30.) Plaintiff argues that he is entitled to (1) certain information regarding incidents that have been investigated within the CBP and (2) personnel files and other documents of individuals who played a role in harassment, discrimination, or retaliation against him. The matter has been fully briefed (ECF Nos. 31, 32), and the court does not find a hearing to be necessary. E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, the court will grant Plaintiff's motion.

## I. BACKGROUND

Plaintiff, a CBP officer, began working for Defendant in August 2008 and is currently stationed at the Blue Water Bridge, which is an international bridge connecting Canada to Port Huron, Michigan. (ECF No. 1, PageID.3.) Plaintiff claims he was subjected to a hostile working environment due to discriminatory treatment directed at the public and himself; he also maintains he was subject to retaliation for complaining about this behavior. (*Id.*, PageID.4.)

In the complaint, Plaintiff describes allegedly discriminatory actions taken against the traveling public. He alleges African American travelers were subjected to additional inspections and unprofessional interviews due to the travelers' race. (*Id.*, PageID.4-5.) In February 2020, Plaintiff observed 17 African American men returning from Toronto in two cars. (*Id.*, PageID.5.) CBP officers allegedly treated the men disrespectfully, and the complaint states this was due to the men's race. (*Id.*) In March 2020, Plaintiff was ordered to make a stop of a vehicle, which his supervisor described as "suspicious." (*Id.*) The vehicle was driven by an African American family, and the complaint alleges that a similarly situated Caucasian family would have been treated differently. (*Id.*, PageID.5-6.) Plaintiff questioned the decision to stop the car, and the CBP officers involved, including Plaintiff, were brought into the Chief CBO Officer's office. (Id., PageID.6.) The Chief Officer, Andrew Beaudry, stated that the CBP officers who conducted the stop "did a good job." (*Id.*, PageID.6.) The complaint alleges similar instances of discriminatory treatment. (*Id.*, PageID.6-7.)

Plaintiff also alleges discriminatory treatment directed at him. "Several times each year," the complaint states that the CBP Chief of Staff Chantal Lasky asked

2

Plaintiff questions regarding his duty station, including: "Why are you here?"; "Why are you here at Blue Water Bridge in Port Huron, MI?"; "You're from Detroit, right?"; "How do you still have your job?"; "Why haven't you been fired yet?" (*Id.*, PageID.7-8.) Plaintiff asserts that these questions were asked due to his race. (*Id.*) Further, "on numerous occasions" between December 2009 and the date of the complaint, CBP officers and supervisors asked to touch Grays' hair. (*Id.*, PageID.8.) Grays declined the requests due to their offensive nature, but the requests continued. (*Id.*) In 2018, the complaint states that Plaintiff was reported as a "Black man with a gun" to the CBP, and Defendant's employees did not "promptly close the matter, causing Grays to needlessly remain under investigation." (*Id.*) CBP Officer James Allen also allegedly told Plaintiff that he could "blend in with protesters" and could "tell the protesters [his] name is Indike Mfufu," which Plaintiff claims is a "stereotypically African-sounding name." (*Id.*, PageID.9-10.)

Plaintiff submitted complaints with the Equal Employment Opportunity Office and claims that Defendant's employees immediately retaliated against him. (*Id.*, PageID.10-11.) For example, some of Plaintiff's supervisors, including Beaudry and Assistant Port Director Gerald Little, required that he submit a doctor's note to take a day of sick leave—despite it being his scheduled day off and CBP policies and contracts generally not requiring such documentation. (*Id.*, PageID.11.) The following day, Plaintiff approached Beaudry regarding this "apparent breach of protocol," and during this incident Beaudry "rapidly approach[ed] him," and both Beaudry and Supervisory CBP Officer Bradley Moore "plac[ed] their hands on him." (*Id.*) An argument ensued, during which Plaintiff, Beaudry, and Moore raised their voices. (ECF No. PageID.515; ECF No.

3

1, PageID.11.) Following this confrontation, Little issued a cease and desist letter demanding that Grays' union stop requesting statements regarding the incident; later that day, Beaudry and Little reported the incident to the agency's Joint Intake Center ("JIC"), and the agency subsequently initiated an investigation into the incident. (ECF No. 1, PageID.11-12.) Moreover, following the confrontation, Beaudry and Little revoked his authority to carry a weapon and placed him on "desk duty." (*Id.*, PageID.12.) Plaintiff alleges this investigation began in retaliation for his complaints of racial discrimination at the CBP. (*Id.*) He also states that Lasky, Little, and Field Training Officer Aaron Haeck gave "negative statements" to investigators regarding the argument with Beaudry even though they did not witness the conversation, evincing a racially hostile work environment. (ECF No. 30, PageID.517.)

While on desk duty, Plaintiff alleges that he was subject to "ongoing harassment." (ECF No. 1, PageID.13.) He states that Lasky notified him in May 2020 that he is prohibited from leaving his desk and instructed him that approval is needed before he could use the restroom. (*Id.*) Plaintiff claims this internal investigation and harassment has "prevented Plaintiff from performing his regular duties, resulting in a loss of status, overtime pay, and preventing him from obtaining employment elsewhere within the agency," and also prevents him from "observing and making further reports about the ongoing race discrimination against the traveling public at the port." (*Id.*)

The investigation, handled by the CBP Office of Professional Responsibility, closed in September 2020, but Plaintiff remained on desk duty until July 13, 2021. (ECF No. 30, PageID.518.) The Office of Professional Responsibility, through Assistant Port Director Gary Calhoun, proposed to suspend Plaintiff for seven days for "unprofessional

4

conduct," including for approaching and advancing towards Beaudry and yelling profane words at him. (ECF Nos. 30-6, 30-7.) He was also charged with AWOL for days that, according to Plaintiff, resulted from "retaliatory scrutiny on his time and attendance." (ECF No. 30, PageID.518; ECF No. 30-7, PageID.609.)

## II. STANDARD

In general, the scope of discovery is broad, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998), and it falls within the sound discretion of the court. *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017). Unless the court limits discovery, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As to proportionality, Rule 26 directs courts to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The information that falls within the scope of discovery "need not be admissible in evidence to be discoverable." *Id.*

## III. DISCUSSION

Plaintiff has brought the instant motion to obtain additional support for his discrimination and retaliation claims. Through discovery, Plaintiff contends he has "learned that CBP responded far more harshly to the allegations against him than it responded to other, more serious incidents involving white employees without protected activity." (ECF No. 30, PageID.518.)

5

Plaintiff's motion to compel is two-fold. First, he requests a more comprehensive answer to Interrogatory 4, seeking "information about comparator employees" and further "underlying facts concerning referrals made to the JIC and investigations that resulted from these referrals." (ECF No. 30, PageID.507, 521.) Second, Plaintiff argues that Defendant must complete Requests to Produce 13 and 14. As to the requests for production, Plaintiff seeks "personnel files and records concerning performance and behavior not maintained in official personnel files" for CBP Officer Andrew Beaudry; Field Training Officer Aaron Haeck; Chief of Staff Chantal Lasky; Watch Commander David Peck; CBP Officer James Allen; Assistant Port Director Gerald Little; and Assistant Port Director Gary Calhoun. (*Id.*, PageID.528.)

### A. Interrogatory 4

Interrogatory 4 requests that Defendant provide information on JIC investigations that have been initiated or completed for the CBP Port Huron location that pertain to "the behavior and/or conduct of a CBP employee, supervisor, or management official between 2019 and the present."[1] (ECF No. 30-8, PageID.621.) More specifically, Plaintiff' has asked Defendant to list the names, job titles, pay grades, and races of the individuals investigated and of those who initiated or played a role in the investigation. (*Id.*, PageID.622.) Plaintiff also seeks "list of documents or evidence collected and/or

---

[1] The parties have apparently narrowed the scope of this request to "matters referred to the Joint Intake Center *and actually investigated* by CBP's Office of Professional Responsibility." (ECF No. 31, PageID.737; ECF No. 30-10, PageID.666 (emphasis added).) While Defendant indicates there have been eighty-two matters arising out of the conduct or performance of CBP Port Huron employees, he has not provided or confirmed an updated number of instances in which these matters have also been investigated by the Office of Professional Responsibility. (ECF No. 30, PageID.508; ECF No. 31, PageID.737.)

6

reviewed," the "nature of alleged misconduct," and the "disposition of the investigation and/or findings." (*Id.*)

Defendant argues that the discrimination claims brought by Plaintiff require Plaintiff to show that there were employees outside of his protected class who were similarly situated in "all relevant aspects" and were treated more favorably. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). Relying on the factors set forth in *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)*,* Defendant argues that Plaintiff's request is overbroad, particularly because it "seeks information that goes far beyond the scope of similarly situated employees." (ECF No. 31.) In *Mitchell*, the Sixth Circuit enumerated factors that make an employee "similarly situated," explaining that comparators "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell.*, 964 F.2d at 583. Defendant's objection to Plaintiff's motion is rooted in the fact that Plaintiff seeks information of matters that were not handled by the same ultimate decisionmaker, incidents involving "all employees" without regard to rank, and incidents involving a "broad range of conduct" as opposed to Plaintiff's comparable unprofessional conduct. (ECF No. 31, PageID.739.)

But as an initial matter, the Sixth Circuit has clarified that "the requirements for finding a similarly situated comparator are not so onerous." *Redlin v. Grosse Pointe Public Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019) (citing *Ercegovich*, 154 F.3d at 352). Courts are directed not to "assume . . . that the specific factors discussed in *Mitchell* are

7

relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Ercegovich*, 154 F.3d at 352. Thus, the *Mitchell* factors are not as rigid as Defendant seemingly advocates. Indeed, the Sixth Circuit has curtailed the "same supervisor" requirement, noting it has never deemed the criterium as an "inflexible requirement." *See Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (quoting *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 479-80 (6th Cir. 2003)); *accord Louzon v. Ford Motor Co.*, 718 F.3d 556, 564 (6th Cir. 2013) (applying the "same supervisor" requirement to the particular management and supervision structure of the defendant so as to avoid rendering plaintiff's burden "virtually impossible"). And depending on the circumstances, a plaintiff claiming racial discrimination can be similarly situated "to a non-protected employee even though the two individuals 'worked in different . . . departments and had different supervisors.'" *Redlin*, 921 F.3d at 610 (quoting *McMillian v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005)). Accordingly, Plaintiff's ability—through discovery—to determine just what the circumstances are in his particular case matters a great deal.

Especially at the discovery stage, the Sixth Circuit has cautioned against framing the similarly situated standard too narrowly or necessitating an "exact correlation" between a plaintiff and potential comparators. *See Bobo*, 665 F.3d at 752. In *Bobo*, the Sixth Circuit found an "improper denial of discovery" where the district court sided with a defendant who refused to provide discovery on "potential comparators." *See id.* at 752-53. The *Bobo* court explained that "the discovery order effectively blocked Bobo from obtaining relevant and potentially admissible evidence on a critical element of his

8

case—evidence necessary to convince a jury that there were [others] . . . who were similarly situated to Bobo in all relevant respects and yet received better treatment than Bobo." *Id.* at 752. Because "[d]iscrimination cases frequently turn on whether the plaintiff can identify one or more comparators who are similarly situated in all relevant respects," there are "problems inherent in allowing a defendant to control the designation of comparators by simply refusing to provide requested comparator evidence except as to those persons it selects." *Id.* (citing *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 25, 28–29 (D.C. Cir. 1997)). Moreover, as noted by Sixth Circuit, if the court were to "limit discovery on other potential comparators," doing so would "improperly narrow" the scope of discovery as permitted by the Federal Rules of Civil Procedure. *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

      Here, Plaintiff seeks information that is crucial to his case and is clearly relevant to his claims, both because it could help bolster the substantive aspects of his Title VII claims or provide him with information needed to oppose the credibility of managers or employees who could potentially testify for Defendant. *See Bush v. Dickerson*, No. 16-6140, 2017 WL 3122012, at *4 (6th Cir. 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) ("[T]he scope of discovery is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"). While Defendant argues that the information sought is outside of the subject matter at issue in this case, the court disagrees; "discovery itself is designed to help define and clarify the issues." *Id.* (quoting *Oppenheimer*, 437 U.S. at 351). As Plaintiff argues, the information sought can provide support for his claims because if, in dealing with Plaintiff's misconduct, individuals

9

involved in his referral to JIC and investigation "violated policy or broke with common practice," then "a retaliatory or discriminatory motive for doing so is much more likely to be present." (ECF No. 30, PageID.527.) The court agrees that this information is "relevant" for discovery purposes and could help Plaintiff establish necessary elements of his claim, especially as it pertains to identifying potential comparators. The court finds that the request is not overbroad.

As to the proportionality factors, Defendant rests his position on the above, arguing only that the request is too broad because it relates to individuals who—according to Defendant—are not "similarly situated." (ECF No. 31, PageID.739-42.) Defendant has not provided the court with concrete explanations as to why this request would be particularly burdensome or expensive. On the other hand, the court finds that the issues present in this action depend at least in part on the information sought, and such access to such information lies within Defendant's control. And to the extent Defendant believes the request is overbroad, Plaintiff has attempted to narrow the scope of his request by inquiring into only "matters referred to the Joint Intake Center *and actually investigated* by CBP's Office of Professional Responsibility."[2] (ECF No. 31,

---

[2] Defendant also objects to Plaintiff's requests because comparators "must have engaged in comparable acts of seriousness." (ECF No. 31, PageID.740.) But as Plaintiff points out, it seems as though Defendant's policies deem Plaintiff's and his potential comparators' conduct to be at least somewhat comparable. Plaintiff's conduct was referred to the JIC, and he seeks information regarding others' misconduct that was reported the JIC. Thus, because Defendant's policies make clear that a CBP employee's behavior should be reported to the JIC only if it can be classified as "criminal activity" or "serious misconduct"—as opposed to issues that are "not as serious"—the nature of the conduct seems similar. (ECF No. 30-4, PageID.599; ECF No. 32-2, PageID.791-92.)

PageID.737; ECF No. 30-10, PageID.666 (emphasis added).) Plaintiff also has requested this information dating back to only 2019. (ECF No. 30-8, PageID.621.)

In short, "[t]he refusal of a defendant to disclose requested comparator information denies plaintiff the opportunity to determine whether the evidence actually reveals comparator status and different treatment, critical elements of the claim that the trier of fact must determine." *Bobo*, 665 F.3d at 752. (citing *Culwell v. City of Fort Worth*, 468 F.3d 868, 873-74 (5th Cir.2007); *cf. Louzon*, 718 F.3d at 567 (holding that it "is not a prerequisite in discrimination cases that a comparator have the same supervisor," and that restricting discovery on such an erroneous basis is improper). While Defendant's position has focused on the meaning of "similarly situated employees"—and while his arguments may carry greater weight on the merits of the action—his arguments do not, at this stage of the litigation, justify limiting discovery such that Plaintiff is at the mercy of Defendant hand-picking individuals who should be considered proper comparators or deemed a supervisor. *See, e.g.*, *McMaster v. Kohl's Dep't Stores, Inc.*, No. 18-13875, 2020 WL 755379, at *1 (E.D. Mich. Feb. 15, 2020) (Whalen, Mag. J.) (noting Sixth Circuit case law has expanded the view as to who is a "supervisor" for purposes of identifying similarly situated comparators). Plaintiff's Interrogatory 4 is within the scope of discovery.

### B. Requests to Produce 13 and 14

Plaintiff also seeks "the complete personnel files, to include all performance evaluations" of Chief CBP Officer Andrew Beaudry, Field Training Officer Aaron Haeck, Chief of Staff Chantal Lasky, Watch Commander David Peck, CBP Officer James Allen, Assistant Port Director Gerald Little, Assistant Port Director Gary Calhoun, and

11

Supervisory CBP Officer Moore, as well as "all documentation and correspondence concerning the performance and behaviors" of these individuals that are not contained in the personnel files. (ECF No. 30-8, PageID.641-43.) Defendant argues that Plaintiff must offer a compelling showing of relevance, and that a wholesale production of personnel files is unwarranted given the privacy interests associated with an employee's file. (ECF No. 31, PageID.743-45.)

While there is no privilege that necessarily protects the production of personnel files, the Sixth Circuit has recognized a "valid interest" in the privacy of these files. *See Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 365 (6th Cir. 1999); *see also Murray v. City of Warren*, No. 19-13010, 2020 WL 4783297, at *3 (E.D. Mich. Aug. 17, 2020) (Whalen, Mag. J.). However, personnel files are not always protected from discovery. *See Parrish v. Ford Motor Co.*, 953 F.2d 1384 (6th Cir. 1992) ("[W]e strongly suggest that the district court permit discovery of the personnel files . . . ."); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384-85 (W.D. Tenn. 1999); *Murray*, 2020 WL 4783297, at *3. In balancing an employee's privacy interest and the discoverability of a personnel file, courts generally require a party to show a "heightened" or "compelling" showing of relevance. *See Miller*, 186 F.R.D. at 384-85; *Ford Motor Co. v. Versata Software, Inc.*, No. 15-10628, 2017 WL 3944392, at *3 (E.D. Mich. Aug. 7, 2017) (Stafford, Mag. J.) (collecting cases).

With the exception of Peck,[3] Plaintiff has alleged that each of the individuals listed above have in some way participated in harassment, discrimination, or retaliation

---

[3] Plaintiff maintains that Peck's file is discoverable, but the court agrees with Defendant on this point. Peck is mentioned nowhere in the complaint, and it is therefore difficult to conclude Plaintiff has made a showing of "heightened" relevance. Although Plaintiff

12

against him. Given their critical roles in Plaintiff's claims, the court will grant limited discovery to the sought personnel files; where an employee plays such a central role in a discrimination case, "personnel files may be particularly relevant." *See Griffith v. Wal-Mart Stores, Inc.*, 163 F.R.D. 4, 5 (E.D. Ky. 1995) (citing *Parrish*, 953 F.2d at 1384) (allowing discovery of personnel files where they "may contain documentary evidence of discriminatory acts"); *Kaczmarek v. Res-Care, Inc.*, No. 1:13 CV 1959, 2014 WL 3408576, at *4 (N.D. Ohio July 10, 2014) (permitting discovery of personnel files where they will demonstrate the plaintiff was the only employee disciplined for particular conduct). The court will therefore permit discovery of these employees' documents as it pertains to "material concerning the timeline of their employment by the agency (hire and separation dates, documents concerning separation from service, positions held, documents concerning separation from positions held), and material discussing, assessing, and/or evaluating their performance and conduct," as requested by Plaintiff. (ECF No. 30, PageID.530.) While there may be some privacy concerns implicated in these documents, the privacy concerns are not as substantial as Defendant apparently contends, and the documents fall within the scope of discovery in this case. Although Defendant maintains that such information is not proportional to the needs of the case, the court disagrees, as the timeline and any reasons for employment termination of Plaintiff's superiors may coincide with Plaintiff's discrimination allegations. Moreover, as it relates to performance and conduct, these documents—to the extent Defendant

---

provided documents to demonstrate Peck's role in the action, the e-mail chain does little to support the notion that Peck took any meaningful part in the alleged mistreatment of Plaintiff. (ECF No. 30-13.) Without a more compelling showing of relevance, Peck's personnel file is not discoverable.

13

possess any—should also encompass any "grievances or complaints filed against these individuals involving claims of racial discrimination or harassment, or disciplinary actions," including those involving Plaintiff, and any documented responses to those grievances. *See Murray*, 2020 WL 4783297, at *3; *accord Miller*, 186 F.R.D. at 385. However, the court will not permit discovery of certain material that is typically found in personnel files, namely financial, salary, insurance, health, Social Security, and family information, as these categories "have no relevance to the issues in this case." *Murray*, 2020 WL 4783297, at *3. Finally, any concerns as to privacy or privilege should be alleviated due to the stipulated protective orders and agreement regarding inadvertent production of privileged information. (ECF Nos. 22, 23.)

In sum, while there are legitimate privacy interests in personnel files, the documents sought in this case are particularly relevant because the employees whose personnel files are sought have participated, in some way, in the alleged discriminatory actions. *See Hill v. Motel 6*, 205 F.R.D. 490, 496 (S.D. Ohio 2001) (permitting discovery of personnel files in age discrimination suit because privacy interests do not "override Rule 26(b)(1)'s standards"). Because this information falls within the scope of discovery, Plaintiff should have the ability to obtain the critical information he needs to present a full case. In recognition of the relevant privacy interests, however, the court will require that the produced documents are for attorneys' eyes only.

### C. Attorneys' Fees & Reasonable Expenses

When a motion to compel is granted, "the court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless, among other

things, the "opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).

The court will grant Plaintiff's motion, but Plaintiff is not entitled to fees and expenses incurred in bringing his motion to compel. First, the court has limited the discoverable material sought by Plaintiff, particularly as it pertains to his request for the complete personnel files of individuals. Second, Defendant's answers to the interrogatories and requests for production at issue, and his objections to Plaintiff's motion, all had a sound legal and factual basis such that they were substantially justified. The court therefore declines to grant Plaintiff fees under Rule 37.

## IV. CONCLUSION

Given the relevance of the information sought by Plaintiff, and finding that the information is proportional to the needs of the case, Plaintiff is entitled to discovery of the information requested in Interrogatory 4 and a limited category of documents under Requests to Produce 13 and 14. Accordingly,

IT IS ORDERED that Plaintiff's "Motion to Compel" (ECF No. 30) is GRANTED, as follows:

- As to Interrogatory 4, Defendant must provide Plaintiff with the requested information, albeit with the narrowed scope pertaining to matters referred to the Joint Intake Center *and actually investigated* by CBP's Office of Professional Responsibility, by **March 7, 2022.**
- As to Requests to Produce 13 and 14, Defendant must provide, as it relates to all enumerated individuals except Peck, (1) material concerning the timeline of employment by the agency (hire and separation dates, documents concerning

15

separation from service, positions held, documents concerning separation from positions held), and material discussing, assessing, and/or evaluating their performance and conduct (even if the evaluations did not result in discipline); and (2) grievances or complaints filed against these individuals pertaining to claims of racial discrimination or harassment, or disciplinary actions—including matters related to Plaintiff's grievances—and any documented responses to any complaints or grievances. All documents produced pursuant to Requests to Produce 13 and 14 are deemed "attorneys' eyes only" until further order of the court. Defendant must produce these documents by **March 7, 2022.**

                                                  s/Robert H. Cleland
                                                  ROBERT H. CLELAND
                                                  UNITED STATES DISTRICT JUDGE

Dated: February 8, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 8, 2022, by electronic and/or ordinary mail.

                                                   s/Lisa G. Wagner
                                                 Case Manager and Deputy Clerk
                                                 (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-10526.GRAYS.MotionToCompel.MAZ.RHC.2.docx